IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Vernon R. Chappelle, Sr.,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | 1:21cv863 (RDA/JFA) |
| Dr. Charles Campbell, *et al.*,<br>    Defendants. | )<br>)<br>) | |

ORDER

For the reasons stated in the accompanying Memorandum Opinion, Defendants Clarke and Watson's motion to dismiss [Dkt. No. 18] is GRANTED.

Defendants Allen, Dr. Campbell, and Searleman motion to dismiss will be resolved by a separate order. Therefore, this ruling is interlocutory, and plaintiff must wait for a final order to be entered before he can appeal this Order.

The Clerk is directed to send a copy of the Memorandum Opinion and this Order to plaintiff pro se and to all counsel of record.

Entered this   5   day of January 2023.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Vernon R. Chappelle, Sr., <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )     1:21cv863 (RDA/JFA) <br> ) |
| Dr. Charles Campbell, *et al.*, <br>     Defendants. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

Vernon R. Chappelle, Sr. ("Chappelle" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983. [Dkt. No. 1]. The matter was screened pursuant to 28 U.S.C. § 1915A, and plaintiff was granted leave to file an amended complaint. [Dkt. No. 1]. Plaintiff filed an amended complaint in which he alleges that the defendants—Director Harold W. Clarke, Warden Dara Watson, Crystal Allen (R.N.), Dr. Charles Campbell, and Virginia Searleman (L.P.N.)—violated his Eighth Amendment rights because they were deliberately indifferent to plaintiff's serious medical need. [Dkt. No. 8 at 4].[1] Defendants Clarke and Watson (Virginia Department of Corrections, "VDOC defendants") have moved to dismiss the amended complaint. [Dkt. Nos. 18, 19]. Plaintiff was advised of his right to file responsive materials to the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 18, 21]. Plaintiff was granted extensions of time to file a response by orders dated August 10, 2022 [Dkt. No. 24] and November 2, 2022. [Dkt. No. 26]. His response was due on or before November

---

[1] Plaintiff did not name three of the original named defendants in his amended complaint and those three defendants (M. Abrams-Godfrey, ADA Representative; A. White, Assistant Warden; and L. Green, Grievance Coordinator) were dismissed without prejudice on March 30, 2022. [Dkt. No. 9 at 2]. The amended complaint alleged only an Eighth Amendment claim. [Dkt. No. 8 at 4].

17, 2022. The time has passed for plaintiff to file a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the motions to dismiss must be granted.[2]

## I. Amended Complaint

In 2016, Chappelle, who had been at St. Bride's Correctional Center for two years, noticed his right index finger and right pinky finger had hard ball-like growths that caused him "sharp pains and swellings." [Dkt. No. 8-1 at 11]. He filed a request form on January 26, 2017 for medical attention indicating he was experiencing "pain, swelling, and callouses" on his right hand that interfered with "handshakes and exercises." [*Id.* at 32]. He was seen by "medical" on January 31, 2017 for several matters, including "hand finger damage." [*Id.* at 32-33]. Chappelle complained he was experiencing pain, he dropped things, and the "retraction" was getting worse and affecting his index finger. The nurse (L. Karaszuski) tested both of his hands and noted each was "strong" and told him that he would be referred to the doctor for evaluation. [*Id.* at 33-34].

Chappelle was also being treated for sleep and back issues at this time. He was seen on February 6 and 7, 2017, but the medical notes do not reflect that he complained about his right hand. The notes also reflect he was being prescribed Tylenol for pain. [*Id.* at 35-36]. He submitted a medical request on February 20, 2017, referencing nasal issues, back issues, and seeking an x-ray of his right hand. Defendant Allen responded on February 22, 2017 and stated that clinical decisions are determined by the provider. [*Id.* at 37].[3] He submitted another request for medical assistance on February 24, 2017 that requested a nasal solution, sought evaluation of his right hand, and complained of numbness in his feet from "walking or jogging," and he was scheduled for sick

---

[2] Defendants Campbell, Allen, and Searleman's motion to dismiss the amended complaint [Dkt. Nos. 20, 22] will be addressed in a separate memorandum opinion.

[3] Defendant Allen also directed Chappelle to the library "to obtain AMA information," because he asked for the recommended diagnoses and treatments for the various matters he listed in his request. [*Id.*].

call. [*Id.* at 38]. A response by a non-defendant nurse indicated that Chappelle had been placed on sick call.

Chappelle was seen by Dr. Campbell for his several complaints on March 14, 2017. Dr. Campbell observed that the second and fifth digits of Chappelle's right hand "have been permanently bent since 2012." [*Id.* at 39]. Dr. Campbell evaluated Chappelle's contractures on his fingers again along with his other complaints and noted Chappelle was in no apparent distress, was alert and oriented, and characterized the contraction as "mild." [*Id.*]. Dr. Campbell counseled Chappelle that there was "no clinical indication for surgical intervention for [the] flexion contractures" in his right hand, which were "old." [*Id.*].

On March 17, 2017, Chappelle filed an informal complaint alleging Dr. Campbell had not "diagnose[d] or treat[ed]" the injury to the fingers on his right hand. [*Id.* at 40]. On March 27, 2017, Defendant Allen responded that the treating physician determines that treatment plan and that there was "no clinical indications for an offsite referral." [*Id.*]. He filed a second informal complaint on March 22, 2017. [*Id.* at 46]. On April 11, 2017, Defendant Allen responded that the examination on March 14, 2017 had determined that there was "mild thickening of the skin" on both sides of his "fifth digit," that Chappelle had shaved the skin off himself, and he was again told there was "no clinical indication for surgical intervention." [*Id*].

On April 12, 2017, Chappelle filed a formal grievance stating that he had told Dr. Campbell that his hand was injured on September 12, 2012 in the Hampton Roads Regional Jail when he was attacked by "gang members." [*Id.* at 41]. He complained that he had been trying to get his hand x-rayed for three years and that he wanted it x-rayed and treated and that Dr. Campbell's inaction had allowed it to "worsen." [*Id.*]. On May 17, 2017, Defendant Watson determined the grievance was unfounded because the physician had examined the hand on March 14, 2017,

evaluated the second and fifth digits of his right hand, determined that there was "no clinical indication for surgical intervention for flexion contracture," and that the physician determines whether x-rays are necessary. [*Id.* at 42]. On June 6, 2017, Chappelle's second level appeal was determined to be unfounded. The response indicated that the "physician was responsible for determining the appropriate course of treatment for his medical needs." [*Id.* at 45].

Several letters attached to the amended complaint indicated that Chappelle's family had complained to the VDOC about his medical care for the two fingers on his right hand and a letter from the VDOC to Chappelle dated October 19, 2018 stated he would be re-evaluated. [*Id.* at 27]. A letter to Chappelle from the VDOC dated November 6, 2018 stated that the reevaluation had determined that surgery was not indicated, and that Chappelle had no difficulty with activities of daily living or any significant physical limitations. [*Id.* at 24].

Chappelle filed an informal complaint on July 14, 2019 complaining that Defendant Watson had not responded to his requests for medical assistance with his right hand. The July 18, 2019 response indicated his request had been forwarded to the medical department because he was complaining about "medical issues." [*Id.* at 50].

The amended complaint indicates that Chappelle was seen by a Dr. Peter Jacobsen on May 18, 2021 who noted a "severe dupuytren contracture of 5th finger on his right hand." Dr. Jacobsen referred Chappelle to Dr. Chen with "regard to his right hand." [*Id.* at 28].

## II. Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). The Federal Rules of Civil Procedure require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a). This pleading

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp.*, 917 F.3d at 211.

To meet the Rule 8 standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the truth of well-pleaded facts is presumed, a court is not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Riddick v. Watson*, 503 F. Supp. 3d 399, 410 (E.D. Va. 2020) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Additionally, sworn allegations, such as Plaintiff's allegations regarding the medical condition fail to constitute any type of admissible evidence. *See Hinton v. Amonette*, No. No. 3:18cv59, 2021 WL 279238, at *3 (E.D. Va. Jan. 27, 2021) (plaintiff "as a lay person[,] is not competent to testify that his Hepatitis C, rather than his many other ailments, caused these physical problems') (citing *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001); *Raynor v. Pugh*, 817 F.3d 123, 131 (4th Cir. 2016) (Keenan J., concurring) (explaining that a layperson's interpretation of medical tests or "speculation regarding the causes" of a condition "constitute conclusory and inadmissible lay opinion")).

## III. Analysis

Chappelle argues Watson was deliberately indifferent to his serious medical need with regard to his right hand because he alleged that he showed his "functionally impaired fingers" to Warden Watson on June 12, 2019 [Dkt. No. 8-1 at 8], that he tried to speak with Warden Watson several more times about his fingers and submitted request forms to her, and that Watson did not respond. [*Id.*]. He alleges that he wrote to Warden Watson, the grievance coordinator, and Director Clarke to describe his "ongoing condition" and explain "how he could not get medical attention and care." [*Id.* at 12]. The alleged letters are the basis upon which he alleges he established that Clarke was also deliberately indifferent, and he argues are further evidence that establishes Watson was deliberately indifferent.

An Eighth Amendment claim relating to medical care in prison requires a plaintiff to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, a plaintiff must allege two distinct elements to support a claim. First, he must allege a sufficiently serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).[4] Here, defendants Clarke and Watson, for the purposes of this motion, concede that plaintiff has alleged a serious medical injury. [Dkt. No. 19 at 3, n.1].

Second, a plaintiff must allege that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. *See Estelle*, 429 U.S.

---

[4] The Eighth Amendment does not require that an incarcerated person receive "unqualified access to health care" of his choice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A prisoner's right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

at 106. Instead, "an official acts with deliberate indifference *if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them*." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (emphasis added). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Absent exceptional circumstances, a plaintiff cannot establish a cognizable deliberate indifference claim when there exists a mere disagreement between the plaintiff and the prison official over the proper medical care. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Hixon v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) ("disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim").

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer*, 511 U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06). *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *see Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (to satisfy the second prong of *Farmer*, "the official in question [must have] subjectively recognized a substantial risk of harm.... [and] the official in question subjectively

recognized that his actions were 'inappropriate in light of that risk.'" (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright*, 766 F.2d at 850 "a defendant "must have had personal knowledge of and involvement in the alleged deprivation of [plaintiff]'s rights in order to be liable").

Further, to state a claim under §1983, a plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676. A plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights," *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977), and allegations that a grievance has been denied or negligently investigated are insufficient to establish the requisite personal involvement under §1983. "The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (citation omitted); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a prison official's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability"). Any involvement Watson or Clarke may have had in the grievance process is not a basis for 1983 liability.

To the extent Chappelle seeks to hold Clarke or Watson liable on the basis of supervisory liability, his claim also fails. For a prison supervisor's conduct to constitute deliberate indifference, they must have "knowledge of a pervasive and unreasonable risk to harm to the prisoners, [and] fail to take reasonable remedial steps to prevent such harm." *Orpiano v. Johnson*, 632 F.2d 1096,

1101 (4th Cir. 1980). The plaintiff must allege facts sufficient to show: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted).

The amended complaint does not allege that either Clarke or Watson were aware of a pervasive and unreasonable risk of constitutional injury existed for prisoners at St. Brides; establish that either Clarke or Watson were deliberately indifferent to or tacitly authorized an alleged offensive practice; or an affirmative causal link between either Clarke or Watson's inaction and the particular constitutional injury allegedly suffered by Chappelle. There is no evidence Clarke has any knowledge or awareness that Chappelle wrote to him about seeking treatment for his hand, and the letters from the VDOC to Chappelle indicated that the VDOC ensured his hand would be re-evaluated, it was, the medical determination was that surgery was not indicated, and that Chappelle had no difficulty with activities of daily living or any significant physical limitations. [Dkt. No. 8-1 at 24].

The same is true of Watson. Although Chappelle alleges that Watson saw his hand, the record establishes that his concerns were referred to the medical department and although he disagreed with Dr. Campbell's treatment decision, he was seen, repeatedly, by the medical staff at

St. Brides and at some point was referred to Dr. Jacobsen and then Dr. Chen.[5]

Finally, prison officials, such as Clarke and Watson, are entitled to rely on the opinions, judgment, and expertise of medical personnel. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *see, e.g., Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (affirming judgment as a matter of law on deliberate indifference claim for prison administrative officer who relied on medical opinions of doctors who had investigated inmate's complaint); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants ... can rely on the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). It is not the function of prison administrators to second guess the good faith treatment decisions of licensed physicians. *Shakka*, 71 F.3d at 167.

## IV. Conclusion

For the reasons outlined above, the defendant's motion to dismiss [Dkt. No. 18] will be granted. An appropriate order shall issue alongside of this Memorandum Opinion.

Entered this ___5___ day of January 2023.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[5] To the extent that Chappelle seeks to hold Watson liable for his alleged deliberate indifference claim under a theory of respondeat superior.

> [I]t is firmly established that § 1983 liability cannot be predicated on a theory of respondeat superior. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (unpublished per curiam) (stating that "the principles of respondeat superior have no application to § 1983 claims"); *Harbeck v. Smith*, 814 F. Supp. 2d 608, 626 (E.D. Va. 2011) (same).

*Riddick v. Watson*, 503 F. Supp. 3d 399, 422 (E.D. Va. 2020); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) (a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law).