IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Vernon R. Chappelle, Sr., <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )     1:21cv863 (RDA/JFA) <br> ) |
| Dr. Charles Campbell, *et al.*, <br>     Defendants. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

Vernon R. Chappelle, Sr. ("Chappelle" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983. [Dkt. No. 1]. The matter was screened pursuant to 28 U.S.C. § 1915A, and plaintiff was granted leave to file an amended complaint. [Dkt. No. 1]. Plaintiff filed an amended complaint in which he alleges that the defendants—Director Harold W. Clarke, Warden Dara Watson, Crystal Allen (R.N.), Dr. Charles Campbell, and Virginia Searleman (L.P.N.)—violated his Eighth Amendment rights because they were deliberately indifferent to plaintiff's serious medical need. [Dkt. No. 8 at 4].[1] Defendants Allen, Dr. Campbell, and Searleman ("medical defendants") have moved to dismiss the amended complaint. [Dkt. Nos. 20, 22]. Plaintiff was advised of his right to file responsive materials to the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 21]. He was granted extensions of time to file a response by orders dated August 10, 2022 [Dkt. No. 24] and November 2, 2022. [Dkt. No. 26]. His response was due on or before November 17, 2022. The time has passed

---

[1] Plaintiff did not name three of the original named defendants in his amended complaint and those three defendants (M. Abrams-Godfrey, ADA Representative; A. White, Assistant Warden; and L. Green, Grievance Coordinator) were dismissed without prejudice on March 30, 2022. [Dkt. No. 9 at 2]. The amended complaint alleged only an Eighth Amendment claim. [Dkt. No. 8 at 4].

for plaintiff to file a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the motions to dismiss must be granted.[2]

## I. Amended Complaint

In 2016, Chappelle, who had been at St. Bride's Correctional Center for two years, noticed his right index finger and right pinky finger had hard ball-like growths that caused him "sharp pains and swellings." [Dkt. No. 8-1 at 11]. He filed a request form on January 26, 2017 for medical attention indicating he was experiencing "pain, swelling, and callouses" on his right hand that interfered with "handshakes and exercises." [*Id.* at 32]. He was seen by "medical" on January 31, 2017 for several matters, including "hand finger damage." [*Id.* at 32-33]. Chappelle complained he was experiencing pain, he dropped things, and the "retraction" was getting worse and affecting his index finger. The nurse (L. Karaszuski) tested both of his hands and noted each was "strong" and told him that he would be referred to the doctor for evaluation. [*Id.* at 33-34].

Chappelle was also being treated for sleep and back issues at this time. He was seen on February 6 and 7, 2017, but the medical notes do not reflect that he complained about his right hand. The notes also reflect he was being prescribed Tylenol for pain. [*Id.* at 35-36]. He submitted a medical request on February 20, 2017, referencing nasal issues, back issues, and seeking an x-ray of his right hand. Defendant Allen responded on February 22, 2017 and stated that clinical decisions are determined by the provider. [*Id.* at 37].[3] He submitted another request for medical assistance on February 24, 2017 that requested a nasal solution, sought evaluation of his right hand, and complained of numbness in his feet from "walking or jogging," and he was scheduled for sick

---

[2] Clarke and Watson motion to dismiss the amended complaint [Dkt. Nos. 18, 19] will be addressed in a separate memorandum opinion.

[3] Defendant Allen also directed Chappelle to the library to obtain "to obtain AMA information," because he asked for the recommended diagnoses and treatments for the various matters he listed in his request. [*Id.*].

2

call. [*Id.* at 38]. A response by a non-defendant nurse indicated that Chappelle had been placed on sick call.

Chappelle was seen by Dr. Campbell for his several complaints on March 14, 2017. Dr. Campbell observed that the second and fifth digits of Chappelle's right hand "have been permanently bent since 2012." [*Id.* at 39]. Dr. Campbell evaluated Chappelle's contractures on his fingers again along with his other complaints and noted Chappelle was in no apparent distress, was alert and oriented, and characterized the contraction as "mild." [*Id.*]. Dr. Campbell counseled Chappelle that there was "no clinical indication for surgical intervention for [the] flexion contractures" in his right hand, which were "old." [*Id.*].

On March 17, 2017, Chappelle filed an informal complaint alleging Dr. Campbell had not "diagnose[d] or treat[ed]" the injury to the fingers on his right hand. [*Id.* at 40]. On March 27, 2017, Defendant Allen responded that the treating physician determines that treatment plan and that there was "no clinical indications for an offsite referral." [*Id.*]. He filed a second informal complaint on March 22, 2017. [*Id.* at 46]. On April 11, 2017, Defendant Allen responded that the examination on March 14, 2017 had determined that there was "mild thickening of the skin" on both sides of his "fifth digit," that Chappelle had shaved the skin off himself, and he was again told there was "no clinical indication for surgical intervention." [*Id.*].

On April 12, 2017, Chappelle filed a formal grievance stating that he had told Dr. Campbell that his hand was injured on September 12, 2012 in the Hampton Roads Regional Jail when he was attacked by "gang members." [*Id.* at 41]. He complained that he had been trying to get his hand x-rayed for three years and that he wanted it x-rayed and treated and that Dr. Campbell's inaction had allowed it to "worsen." [*Id.*]. On May 17, 2017, Defendant Watson determined the grievance was unfounded because the physician had examined the hand on March 14, 2017,

3

evaluated the second and fifth digits of his right hand, determined that there was "no clinical indication for surgical intervention for flexion contracture," and that the physician determines whether x-rays are necessary. [*Id.* at 42]. On June 6, 2017, Chappelle's second level appeal was determined to be unfounded. The response indicated that the "physician was responsible for determining the appropriate course of treatment for his medical needs." [*Id.* at 45].

Several letters attached to the amended complaint indicated that Chappelle's family had complained to the VDOC about his medical care for the two fingers on his right hand and a letter from the VDOC to Chappelle dated October 19, 2018 stated he would be re-evaluated. [*Id.* at 27]. A letter to Chappelle from the VDOC dated November 6, 2018 stated that the reevaluation had determined that surgery was not indicated, and that Chappelle had no difficulty with activities of daily living or any significant physical limitations. [*Id.* at 24].

Chappelle filed an informal complaint on July 14, 2019 complaining that Defendant Watson had not responded to his requests for medical assistance with his right hand. The July 18, 2019 response indicated his request had been forwarded to the medical department because he was complaining about "medical issues." [*Id.* at 50].

The amended complaint indicates that Chappelle was seen by a Dr. Peter Jacobsen on May 18, 2021 who noted a "severe dupuytren contracture of 5th finger on his right hand." Dr. Jacobsen referred Chappelle to Dr. Chen with "regard to his right hand." [*Id.* at 28].

## II. Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). The Federal Rules of Civil Procedure require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a). This pleading

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp.*, 917 F.3d at 211.

To meet the Rule 8 standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although the truth of well-pleaded facts is presumed, a court is not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Riddick v. Watson*, 503 F. Supp. 3d 399, 410 (E.D. Va. 2020) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Additionally, sworn allegations, such as Plaintiff's allegations regarding the medical condition fail to constitute any type of admissible evidence. *See Hinton v. Amonette*, No. No. 3:18cv59, 2021 WL 279238, at *3 (E.D. Va. Jan. 27, 2021) (plaintiff "as a lay person[,] is not competent to testify that his Hepatitis C, rather than his many other ailments, caused these physical problems') (citing *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001); *Raynor v. Pugh*, 817 F.3d 123, 131 (4th Cir. 2016) (Keenan J., concurring) (explaining that a layperson's interpretation of medical tests or "speculation regarding the causes" of a condition "constitute conclusory and inadmissible lay opinion")).

### III. Analysis

Chappelle argues each of the three medical defendants was deliberately indifferent to his

5

serious medical need. The defendants' motion to dismiss argues that Chappelle has not alleged sufficient facts to demonstrate that any of the medical defendants were deliberately indifferent to his medical needs with respect to his right hand. The amended complaint frequently mentions Dr. Campbell and alleges that he was deliberately indifferent from February 2017 through the filing of the complaint in July 2021. Dr. Campbell's deliberate indifference was his failure to "diagnose or treat" the injury to his right hand and take x-rays or perform other tests such as an MRI. Chappelle alleges his condition has worsened over time.

The amended complaint is, at best, conclusory with regard to defendants Allen and Searleman. The amended complaint does not mention defendant Allen in its statement of facts [Dkt. No. 8-1 at 8], and the exhibits indicate that Allen responded to an Inmate Request Form on February 22, 2017 and an Informal Complaint on March 22, 2017. [*Id.* at 37, 40]. Chappelle also alleges that Allen was the "health administrator at St. Brides" and is aware of Chappelle's health issues regarding his right hand through "request forms, informal complaints, and grievances." [*Id.* at 5].

The amended complaint does not allege any specific action or inaction on the part of Defendant Searleman, and she is not mentioned in its statement of facts. [*Id.* at 8]. Instead, Chappelle alleges that Searleman is the "health administrator at St. Brides," she worked with Dr. Campbell every day, Searleman knew of the "severe disability" to Chappelle's right hand, and that Searleman "refused and neglected to provide [Chappelle] medical care." [*Id.* at 4]. Chappelle also fails to allege any dates he received or requested care and treatment from Searleman.

An Eighth Amendment claim relating to medical care in prison requires a plaintiff to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, a plaintiff must allege two

distinct elements to support a claim. First, he must allege a sufficiently serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).[4] For purposes of this motion, the Court will assume that plaintiff has alleged a serious medical injury.[5]

Second, a plaintiff must allege that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. *See Estelle*, 429 U.S. at 106. Instead, "an official acts with deliberate indifference *if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them.*" *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (emphasis added). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Absent exceptional circumstances, a plaintiff cannot establish a cognizable deliberate indifference claim when there exists a mere disagreement between the plaintiff and the prison official over the proper

---

[4] The Eighth Amendment does not require that an incarcerated person receive "unqualified access to health care" of his choice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A prisoner's right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

[5] The record does not address why or how it came about, but the medical records of Chappelle's May 18, 2021 medical visit to Dr. Peter Jacobsen attached to the amended complaint noted a "severe dupuytren contracture of 5th finger on his right hand," and that Dr. Jacobsen referred Chappelle to Dr. Chen with "regard to his right hand." [*Id.* at 28].Dr. Jacobsen's notes indicate that Chappelle's condition may have worsened over time and there is no explanation of the change from "mild" to "severe." In the context of a motion to dismiss, referral to an outside physician who then refers Chappelle to another doctor who indicates a condition may have worsened is sufficient to indicate the matter might be serious. *See Formica v. Aylor*, 739 F. App'x 745, 755 () ("Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'") (citations omitted).

medical care. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Hixon v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) ("disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim").

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer*, 511 U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06). *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *see Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (to satisfy the second prong of *Farmer*, "the official in question [must have] subjectively recognized a substantial risk of harm.... [and] the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright*, 766 F.2d at 850 "a defendant "must have had personal knowledge of and involvement in the alleged deprivation of [plaintiff]'s rights in order to be liable").

Further, to state a claim under §1983, a plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676. A plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights," *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977), and

allegations that a grievance has been denied or negligently investigated are insufficient to establish the requisite personal involvement under §1983. "The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (citation omitted); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a prison official's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability"). Any involvement Allen or Searleman may have had in the request, informal complaint, and grievance process is not a basis for § 1983 liability and their motion to dismiss will be granted.

Further, at best, if either nurse defendant was involved in Chappelle's care, it was under the supervision of Dr. Campbell. Absent extraordinary circumstances, which are not present here, a nurse is entitled to rely upon the medical judgment of a doctor as to the proper course of treatment for an inmate. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017) (concluding nurse did not act with deliberate indifference by following doctor's orders); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (a nurse administrator could rely on opinion of a prison doctor about the treatment that was deemed necessary for a prisoner); *see also Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (holding that nurses may generally defer to instructions given by physicians unless it is clear that doing so will likely cause significant harm to the inmate); *cf. Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) ("[A] nurse is not deliberately indifferent when she reasonably follows a doctor's orders by administering prescribed

medication to an inmate"); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-physician prison employees were not "deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). Dr. Campbell had determined that surgery was unnecessary and that Chappelle's contractures on his right hand were "mild." [Dkt. No. 8-1 at 39].

With regard to Dr. Campbell, the amended complaint makes allegations of a worsening condition that Dr. Campbell refused to treat, a worsening that may have been due to the delay associated with providing treatment, and that apparently required referral to an outside physician. Indeed, the outside physician diagnosed a "severe dupuytren contracture of 5th finger on [Chappelle's] right hand," and referred Chappelle to another doctor. The medical records that are currently part of the record do not explain why Chappelle was referred to an outside doctor, or what care or treatment Chappelle received from 2019 through 2021. In the light most favorable to Chappelle, the facts state a claim against Dr. Campbell and his motion to dismiss will be denied.

## IV. Conclusion

For the reasons outlined above, defendant's Allen and Searleman's motion to dismiss [Dkt. No. 20] will be granted, and defendant Dr. Campbell's motion to dismiss will be denied. An appropriate order shall issue alongside of this Memorandum Opinion.

Entered this \_\_5\_\_ day of January 2023.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge